# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **JAMES McCULLAR,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v.                               } | Case No.: **3:12-CV-00231-RDP** |
| } | |
| **SOCIAL SECURITY** } | |
| **ADMINISTRATION, COMMISSIONER** } | |
| **MICHAEL J. ASTRUE,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff James Phillip McCullar ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking review of the decision by the Commissioner of Social Security[1] ("Commissioner") denying his applications Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). *See* 42 U.S.C. §§ 405(g),1383(c). For the reasons outlined below, the court concludes that the decision of the Commissioner if due to be affirmed.

**I.     Proceedings Below**

On January 12, 2010, Plaintiff filed an application for DIB and SSI. [R. 8, 113-120, 121-130]. Plaintiff claims a disability onset date of September 16, 2009. [R. 113, 121]. Plaintiff's applications were denied on April 15, 2010. [R. 8, 55-58]. Plaintiff then requested and received a hearing before and Administrative Law Judge ("ALJ"), which was held on March 30, 2011. [R. 19-46]. In his June 3, 2011 decision, the ALJ denied disability benefits concluding that Plaintiff was not disabled as that

---

[1]On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security.

term is defined in the Act. [R. 15].  After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review. [R. 1].  42 U.S.C. §§ 405(g), 1383(c).

At the time of the hearing, Plaintiff was 45-years old and had received his GED. [R. 24]. Plaintiff last worked as a self-employed roofer. [R. 24-25].  He has not worked since he was injured after falling off a ladder. [R. 25].  Plaintiff alleged he was disabled after this fall due to a fractured lower back, high blood pressure, leg pain, and the inability to bend over and pick up objects. [R. 168].  Plaintiff did not look for another job because he has not "been able to [] do anything." [R. 26].

Plaintiff testified at the hearing regarding the specifics of his condition.  He indicated that his pain was in his lower back and to the left of his upper hip. [R. 36].  The pain does not radiate down Plaintiff's leg. [R. 37].  Plaintiff stated that he cannot sit, especially in chairs with hard surfaces, and that the pain is "right in the center of [his] back." [R. 29].  Subsequently, Plaintiff testified that the pain is "more to the left" of his back. [R. 29].  Plaintiff suggested that, while sitting, he must take care to distribute his weight and keep some pressure on his right hand preventing its use while Plaintiff is sitting down. [R. 29].  Plaintiff also stated that he "[felt] bad all the time because of [his] blood pressure." [R. 30].  Plaintiff was involved in a car accident in January 2011, but said it did not substantially increase his pain, although he has experienced some cramps in his neck since the accident. [R. 31].

When asked by the ALJ what would keep him from performing some "lighter type job," Plaintiff responded that he had tried to babysit but that he has difficulty picking up his children. [R. 26].  Plaintiff also stated that the only relief from his pain occurs when he is completely lying down or sitting. [R. 26].  The ALJ asked Plaintiff whether he believed he could perform a job where he

was allowed to sit for most of the day. [R. 26-27].  Plaintiff said he could not perform such a job because he can only sit for about two hours at a time and then he has to lie down. [R. 26-27]. Plaintiff further claimed that he would only be able to stand for an hour or an hour and a half. [R. 27].  When asked by the ALJ if he could accept a job that allowed him to sit and stand whenever he needed to, such as working as a gate guard, Plaintiff responded that he did not know if he could perform such a job. [R. 38].  Plaintiff said he would have to sit for a while and then stand for a while. [R. 38].

     Plaintiff testified that he lives with his parents.  [R. 25].  He does not do chores around the house and only prepares "a few" meals for himself. [R. 25].  Plaintiff has a driver's license but does not drive because he wrecked his car in the January 2011 accident. [R. 26].  Plaintiff stated he moves around after he wakes up, his mother makes him breakfast, and then he will sleep again for approximately two hours. [R. 33].  Two weeks before the hearing, Plaintiff mowed the grass on a riding lawn mower for about thirty minutes, but he stated this activity prevented him from doing any other activity over the next three days. [R. 33].  Plaintiff also alleged that he has tried to wash dishes but can only stand at the dishwasher for about twenty minutes and then once he sits down, he can "hardly get up." [R. 34].

     Plaintiff stated that the heaviest item he currently picks up is a library book or a Mountain Dew. [R. 39].  Plaintiff alleged that he cannot pick up a gallon of milk because when he bends and reaches into the refrigerator, he feels pressure on his back. [R. 39].  Plaintiff also claimed that he has trouble bending over to tie his shoes. [R. 39-40].  Previously, Plaintiff has taken Lorcet, Xanax, Soma, and blood pressure medication. [R. 25].  However, he testified he was only currently taking

his blood pressure medicine and Ultram, which Plaintiff described as a "real light pain medication." [R. 25].

A vocational expert ("VE") testified at the hearing that Plaintiff could not return to his prior work as a roofer. [R. 40]. Based upon a hypothetical posed by the ALJ, the VE further testified that someone of Plaintiff's age, education, work history, and with his RFC could perform work as a cashier, clerk, or inspector, all of which exist in significant numbers in the national economy. [R. 42-43]. The VE also testified that Plaintiff would be unable to maintain employment if he was absent from work more than two times per month on a sustained basis. [R. 45]. The VE further stated that if Plaintiff had to lie down for longer periods than could be accommodated by customary work breaks, this limitation would not permit employment. [R. 45].

In support of his claim, Plaintiff presented medical records beginning with an April 2008 radiology report from Russellville Hospital. [R. 205-207]. Images of Plaintiff's right hand showed no acute fracture or dislocation. [R. 205]. Views of Plaintiff's right ankle were also negative. [R. 206]. Radiographs of Plaintiff's right hip were negative as well. [R. 207]. Plaintiff submitted a second radiology report from Russellville Hospital dated September 16, 2009. [R. 203-204]. Images of Plaintiff's lumbar spine showed a mild compression fracture to his L1 vertebra. [R. 203]. Images of Plaintiff's pelvis showed no acute bone injury. [R. 204].

Plaintiff's next record relates to a visit to Family Medical Associates two days later on September 18, 2009. [R. 215]. Treatment notes reflect that Plaintiff fell off a ladder on September 16, 2009 and fractured his back. [R. 215]. Plaintiff was referred for an orthopedic consultation. [R. 215]. Plaintiff returned to Family Medical Associates on October 5, 2009. [R. 214]. During this visit, Plaintiff's blood pressure was recorded at 195/125 and he was "sweating profusely." [R. 214].

The doctor prescribed various medications for Plaintiff's back pain and high blood pressure. [R. 214].

Plaintiff was again seen at Family Medical Associates on October 22, 2009. [R. 213]. He was still having problems with his back pain and was not sleeping well. [R. 213]. His blood pressure had improved to 137/87. [R. 213]. Treatment notes reflect that Plaintiff saw an orthopedist in Florence, Alabama. [R. 213]. The orthopedist recommended surgery, but Plaintiff stated that he did not want to have surgery at that time. [R. 213]. Plaintiff received refills of his pain medication. [R. 213]. Plaintiff returned to Family Medical Associates on November 11, 2009 for anxiety, hypertension, and back pain. [R. 212]. Plaintiff received refills of his pain medication. [R. 212]. Plaintiff returned one month later for sinusitis, back pain, and anxiety. [R. 211]. Treatment notes are difficult to read, but Plaintiff received prescriptions or refills for several medications. [R. 211].

Plaintiff returned to Family Medical Associates on December 4, 2010 for a follow-up visit regarding his back pain and anxiety. [R. 210]. Plaintiff's blood pressure reading was 129/92. [R. 210]. Treatment notes reflect Plaintiff was also suffering from an earache. [R. 210]. Plaintiff was once again diagnosed with sinusitis and back pain. [R. 210]. Plaintiff received refills on various medications. [R. 210]. When Plaintiff was seen again on January 26, 2010, he reported his back pain was a 9 (nine) out of 10 (ten) on a 10-point scale. [R. 209]. Plaintiff also reported his blood pressure goes up when he is in pain. [R. 209]. Treatment notes are once again difficult to read; however, Plaintiff received refills of five medications. [R. 209]. Plaintiff returned to Family Medical Associates on February 19, 2010 to refill his prescriptions. [R. 250]. He told the doctor he felt like his pain was getting worse. [R. 250]. Plaintiff reported some improvement when he took pain

medication but indicated that his pain returns once the medicine wears off. [R. 250]. Although treatment notes are illegible, Plaintiff received four refills of prescriptions. [R. 250].

On March 3, 2010, Dr. R. Glenn Carmichael, a disability determination services physician, completed a physical summary of Plaintiff. [R. 216]. Dr. Carmichael noted that Plaintiff alleged "extreme chronic back pain, muscle spasm, and limitation bending and lifting despite lumbar xray showing only minimal 1L compression." [R. 216]. Dr. Carmichael concluded that there was insufficient clinical information in Plaintiff's file to "rate." [R. 216].

On March 15, 2010, Plaintiff returned to Family Medical Associates complaining that his left arm was numb and throbbing. [R. 249]. Plaintiff was diagnosed with carpal tunnel in his left arm. [R. 249]. The remaining treatment notes are illegible; however, Plaintiff did receive refills for at least five medications. [R. 249].

On March 30, 2010, Dr. Brad Ginevan conducted a disability evaluation of Plaintiff at the behest of the Social Security Administration. [R. 218-221]. Dr. Ginevan noted that Plaintiff complained of a pain level of ten (10) out of ten (10) on a pain scale and that his pain increases when he bends forward. [R. 218]. Plaintiff also complained that he had carpal tunnel syndrome and that his hands stayed numb while writing, driving, and holding objects. [R. 218]. Plaintiff also complained of high blood pressure and said that his pressure levels remained elevated due to his back pain. [R. 218]. During a review of Plaintiff's symptoms, Dr. Ginevan noted under the musculo-skeletal heading that Plaintiff had lumbar back pain and left wrist pain. [R. 218]. Dr. Ginevan also noted that Plaintiff was in moderate distress during the visit. [R. 218]. Dr. Ginevan indicated that Plaintiff had bilateral lumbar spasms but no deformities or tenderness were observed. [R. 220]. Dr.

Ginevan diagnosed Plaintiff with compression fracture L1, lumbago, chronic pain, dyspena with minimal exertion, and hypertension. [R. 220].

Also on March 30, 2010, Plaintiff reported to Urgent Care of Russellville complaining of high blood pressure and low back pain. [R. 227]. Plaintiff stated that he had seen a doctor earlier in the day for an evaluation of his lower pack pain. [R. 227]. Plaintiff could not recall the doctor's name, but Plaintiff indicated that the doctor discontinued his examination due to Plaintiff's high blood pressure. [R. 227]. Plaintiff also confirmed that he was seeking disability after falling off a ladder in September 2009. [R. 227]. Plaintiff's blood pressure was recorded at 150/105. [R. 227]. Plaintiff claims it had been as high as 185/135 earlier that morning during his examination with the disability doctor. [R. 227]. Plaintiff stated that his back pain was a five (5) out of ten (10) on a pain scale. [R. 228]. Plaintiff was diagnosed with hypertension and a lumbar region sprain. [R. 228]. The nurse practitioner prescribed six different medications. [R. 228]. Plaintiff was instructed to monitor his blood pressure for several days and then report to his general physician. [R. 228].

Plaintiff returned to Family Medical Associates on April 13, 2010 to refill his medications. [R. 248]. Plaintiff stated that he had dropped his medicine in paint thinner. [R. 248]. Plaintiff also reported his urgent care visit for elevated blood pressure on March 30, 2010. [R. 248]. Treatment notes are illegible but Plaintiff received refills for five medications. [R. 248]. On May 11, 2010 Plaintiff once again saw a physician at Family Medical Associates for the purpose of refilling his medications. [R. 247]. Plaintiff also complained of anxiety. [R. 247]. Plaintiff was diagnosed with insomnia, hypertension, and degenerative joint disease. [R. 247].

Dr. Carmichael completed a second physical summary of Plaintiff on April 14, 2010. [R. 222]. Dr. Carmichael noted that Plaintiff alleged he suffered from back pain from a fall and a

compression fracture. [R. 222]. Dr. Carmichael also commented that Plaintiff had an elevated blood pressure during his consultative exam with Dr. Ginevan. [R. 222]. Dr. Carmichael recommended a medium RFC with safety precautions. [R. 222].

Family Medical Associates treatment notes from June 4, 2010, July 9, 2010, August 6, 2010, and September 2, 2010 all indicate Plaintiff continued to suffer from degenerative joint disease, anxiety, high blood pressure, and insomnia. [R. 243-246]. These notes make no statements about Plaintiff's back pain specifically. [R. 243-246]. Plaintiff received prescription refills during each visit. [R. 243-246].

Plaintiff again complained of his back pain during a September 28, 2010 visit to Family Medical Associates. [R. 242]. Plaintiff was diagnosed with chronic back pain, degenerative joint disease, and hypertension. Plaintiff received prescriptions for Lortab and Lorcet. [R. 242]. During this visit, Plaintiff indicated that he wanted to stop taking Xanax and Soma. [R. 242]. On October 28, 2010, Plaintiff returned to Family Medical Associates complaining of back pain. [R. 241]. Plaintiff stated that he wished to take Xanax and Soma again. [R. 241]. Plaintiff received a prescription for these medications and refills for others. [R. 241].

On November 23, 2010 and December 20, 2010, Plaintiff saw a physician at Family Medical Associates to follow-up regarding his degenerative joint disease, insomnia, and anxiety. During both visits, Plaintiff received refills of his prescription medication. [R. 239].

On January 12, 2011, Plaintiff was admitted to the emergency room at Russellville Hospital for injuries suffered in a car accident. [R. 230-236]. Plaintiff complained of moderate head, neck, and back pain. [R. 231]. A radiology report noted Plaintiff's degenerative disc disease and mild loss

of height in multiple vertebrae. [R.233]. No fracture or malalignmency was identified. [R. 233]. Plaintiff was discharged and instructed to wear a cervical collar and follow-up in two days. [R. 236].

One final treatment note from Family Medical Associates indicates that Plaintiff returned on January 14, 2011 to follow-up his emergency room visit. [R. 238]. The notes indicate that Plaintiff was "doing well now." [R. 238]. However, remarks under the physical examination clinical findings read: "NOT SEEN!!" [R. 238].

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must

first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

Here, the ALJ found that Plaintiff meets the insured status requirements of the Act through June 3, 2011. [R. 10]. The ALJ then concluded that Plaintiff has not engaged in substantial activity since September 16, 2009, the alleged onset date. [R. 10]. The ALJ determined that Plaintiff suffers from a history of lumbar fracture with residual pain and hypertension, both of which are severe impairments as defined by the Act. [R. 10]. Nonetheless, the ALJ found that Plaintiff does not have

an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. [R. 10].

After consideration of the entire record, the ALJ concluded that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations: he can occasionally lift and carry up to twenty (20) pounds and can frequently lift and carry up to ten (10) pounds; he can sit for six (6) hours in an 8-hour work day (for up to two (2) hours at a time) and he can stand for four (4) hours in an 8-hour work day (for up to one (1) hour at a time); he has no limitations in his upper extremity for work involving fine or gross handling; he cannot lift above shoulder level and he can only occasionally reach overhead; he can occasionally balance, stoop, kneel, crouch, and climb ramps and stairs; he should not work on ladders, ropes, or scaffolding; he should not work at unprotected heights, work around dangerous machinery, or work with heavy vibrating machinery; and he should not work in areas with exposure to extreme cold. [R. 11].

The ALJ concluded that Plaintiff is unable to perform any past relevant work. [R. 13]. Transferability of job skills was immaterial to the disability determination because Plaintiff is not disabled under the Medical-Vocational Rules. [R. 14]. The ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 14]. The ALJ's determination was based upon the testimony of the VE. [R. 14]. Thus, the ALJ ruled that Plaintiff was not disabled as that term is defined in the Act and therefore not entitled to DIB or SSI. [R. 15].

**III.     Plaintiff's Argument for Remand or Reversal**

Plaintiff did not file a brief outlining his arguments for remand or reversal. As indicated in the briefing letter to counsel (*See* Doc. #8), the court does not require briefs. The court has reviewed the ALJ's decision under the appropriate standard of review without drawing inferences or conclusions based upon Plaintiff's failure to file a brief supporting remand or reversal.

**IV.     Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1259.

V.     **Discussion**

After careful review, the court concludes that the ALJ's decision is supported by substantial evidence and that the ALJ correctly applied the law in reaching his decision.

Regarding step one of the sequential evaluation process, the ALJ properly concluded that Plaintiff has not engaged in substantial gainful activity since September 16, 2009. [R. 10]. Substantial gainful activity is work that involves significant mental and physical activities and is usually performed for pay or profit. 20 C.F.R. § 404.1572(a)-(b). Plaintiff testified that he has not worked since he fractured his lower back on that date. [R. 24, 26]. Plaintiff presented no evidence of earnings since September 16, 2009. Plaintiff also testified that he had not sought employment since that time. [R. 26]. Therefore, substantial evidence supports the ALJ's conclusion that Plaintiff has not engaged in substantial gainful activity.

The ALJ then proceeded to step two of the analysis and found that Plaintiff had two severe impairments: (1) history of lumbar fracture with residual pain, and (2) hypertension. [R. 10]. The severity of a medically ascertained disability "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1988). Furthermore, a "diagnosis alone is an insufficient basis for a finding that an impairment is severe." *Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002). Objective medical evidence must confirm the impairment is indeed severe. *See id.*; SSR 96-3p. The court finds that the ALJ properly considered the medical evidence of record, including radiology reports confirming Plaintiff's low back fracture, and treatment notes regarding multiple follow-up visits to Family Medical Associates indicating

Plaintiff's recurring back pain and fluctuating blood pressure readings, in reaching his conclusion that Plaintiff suffers from two severe impairments.

Because he found Plaintiff suffered from two severe impairments, the ALJ properly continued to step three of the sequential analysis. The ALJ concluded that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in the regulations. [R. 10]. Again, substantial evidence supports this conclusion. The ALJ properly considered Plaintiff's impairments in combination. He stated in his decision that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." This statement suffices to demonstrate that the ALJ considered Plaintiff's impairments in combination. *See Hutchinson v. Astrue*, 408 Fed. Appx. 324, 327 (11th Cir. 2011) (finding that the ALJ's statement that [claimant] did not have an 'impairment, individually or in combination' that met one of the listed impairments...shows that the ALJ considered the combined effects of [claimant's] impairments during her evaluation"); *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (reversing a district court's determination that an ALJ did not consider or discuss the cumulative effects of a claimant's impairments where the ALJ explicitly stated that the claimant did not have "an impairment or combination of impairments listed in, or medically equal to one listed" in the regulations); *Jones*, 941 F.2d at 1533 (finding that the ALJ's conclusion that claimant did not have "an impairment or combination of impairments listed in, or medically equal to one listed" in the regulations "evidence[d] consideration of the combined effect of [claimant's] impairments). Additionally, citing Plaintiff's prehearing order response supplied by his attorney, the ALJ noted that Plaintiff did not allege his impairments meet or equal those of a listed impairment. [R. 10, 201].

Having found that Plaintiff's impairments did not meet or equal those listed in the regulations, the ALJ correctly proceeded to the next step of the analysis, which was determining Plaintiff's RFC. Here, the ALJ determined that Plaintiff had the RFC to perform light work with the limitations outlined in Part II above. The ALJ is to consider all relevant evidence when assessing a claimant's RFC. *See* 20 C.F.R. §§ 404.1545, 404.1546, 416.945, 404. 945, 416.946. Here, substantial evidence supports the ALJ's determination regarding Plaintiff's RFC. In assessing Plaintiff's RFC, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of the symptoms were not credible due to inconsistences in the record. [R. 12]. The ALJ noted that although Plaintiff alleged an inability to work, his Function Report indicated that he cared for his children two days a week when he was able, that he prepares meals, washes and folds clothes, and washes dishes. [R. 12, 159-161]. The ALJ rejected Plaintiff's subjective complaints and explained his specifics reasons for doing so. *See e.g., Foote v. Chater*, 67 F.3d 1553, 1560-62 (11th Cir. 1995) ("If the ALJ decides not to credit a claimant's testimony as to [his] pain, he must articulate explicit and adequate reasons for doing so."); *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1338 (N.D. Ala. 2001) ("the ALJ is entitled to consider inconsistencies between a claimant's testimony and the evidence in the record). Moreover, the ALJ noted that Plaintiff's alleged limitations were not supported by medical records. [R. 12].

As an initial matter, the ALJ indicated that after Plaintiff fell from a ladder in September 2009, x-rays evidenced a mild compression fracture. [R. 12]. After this injury, Plaintiff was followed by physicians at Family Medical Associates for persisting back pain and high blood pressure, which Plaintiff claimed increased with his pain. [R. 12]. After a car accident in January

15

2011, x-rays showed degenerative disc disease but there was no fracture and no malalignmency. [R. 12]. The ALJ also commented that during a January 14, 2011 visit to Family Medical Associates, Plaintiff was "doing well" and his blood pressure had improved. [R. 12]. The ALJ described Plaintiff's treatment as conservative and noted that if the treatment provided was not relieving his pain, it would have been reasonable for Plaintiff to have requested a referral or sought more aggressive treatment. [R. 13]. The ALJ also properly considered Plaintiff's conservative treatment in making his RFC findings regarding Plaintiff's credibility and substantial evidence supports his conclusion. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11 th Cir. 1996) (affirming unfavorable credibility finding where ALJ reasoned, in part, that claimant received conservative treatment).

In making his RFC finding, the ALJ discussed other relevant medical evidence of record, including Dr. Ginevan's consultative physical examination. [R. 12]. The ALJ properly considered Dr. Ginevan's report, which indicated that Plaintiff reported pain at ten (10) out of ten (10) on a pain scale but denied any radiation or parenthesis. [R. 12]. Although Plaintiff's blood pressure was elevated during the exam, his heart had a regular rate and rhythm, his speech was audible, understandable, and sustainable. [R. 12]. Dr. Ginevan noted that Plaintiff's extremities displayed no edema, cyanosis, clubbing, or stasis changes. [R. 12]. Although Plaintiff had spasms in his lumbar spine, there were no deformities or tenderness noted. [R. 12]. After making his diagnoses, Dr. Ginevan opined that Plaintiff would have moderate limitations due to decreased range of motion and poor physical and respiratory endurance to mobility. [R. 13, 220].

A non-examining state agency physician opined that Plaintiff could perform a reduced range of work at a medium level of exertion. [R. 13]. The ALJ stated that he assigned no weight to this opinion because it did not come from a medical source. [R. 13]. The court finds that the ALJ

properly assigned no weight to this opinion as evidence from non-examining, reviewing doctors does not constitute substantial evidence on which to base an administrative decision. *See e.g.*, *Fair v. Shalala*, 37 F.3d 1466, 1469 (11th Cir. 1994). After properly rejecting this opinion and considering Dr. Ginevan's report in conjunction with the record as a whole, including Plaintiff's treatment for back pain and high blood pressure, the ALJ determined that Plaintiff retained the ability to perform a reduced range of work with the limitations already noted. [R. 13].

After making his RFC finding, the ALJ continued with step four of the sequential evaluation process and concluded that Plaintiff was unable to perform any of his past work. [R. 13]. Therefore, Plaintiff met his burden of establishing his inability to return to his previous work. *See Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991). Because the ALJ determined that Plaintiff could not perform his past relevant work as a roofer, he then properly proceeded to the fifth and final step of the analysis.

As part of this analysis, the ALJ must determine whether Plaintiff is able to perform any work commensurate with his age, education, work experience, and RFC. 20 C.F.R. § 404.1520(g). The ALJ met the Commissioner's burden to prove such work exists in the national economy. The ALJ concluded that Plaintiff could work as a cashier, a clerk, and an inspector. [R. 14]. In making this finding, the ALJ utilized the grid rules and considered the testimony of the VE who testified that jobs consistent with Plaintiff's characteristics existed in the national economy. Here, the VE testified that given Plaintiff's age, education, work experience, and RFC, that three jobs — cashier, clerk, and inspector — all exist in significant numbers in the national economy. [R. 14]. Specifically, the VE testified that 400,000 cashier jobs, 45,000 clerk, and 60,000 inspector jobs exist in the national economy. [R. 14]. The ALJ properly relied on this testimony and concluded that Plaintiff could

perform other work. *See Allen v. Brown*, 816 F.2d 600, 603 (11th Cir. 1987) (the jobs must be available in significant numbers in the national economy, not the geographic area where the claimant resides). Therefore, based upon that analysis, the ALJ concluded Plaintiff is not disabled.

**VI.    Conclusion**

After carefully reviewing the ALJ's decision and the entire record, the court concludes the ALJ properly weighed the evidence, resolved material conflicts in testimony, and determined the case accordingly. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). As such, the Commissioner's decision is due to be affirmed. The Commissioner's decision is supported by substantial evidence and the proper legal standards were applied. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ____14th____ day of March, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE